IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| RIB CITY FRANCHISING, LLC, a Florida Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>SARAH BOWEN, et al.,<br><br>Defendants, | **MEMORANDUM DECISION AND ORDER DENYING IN PART MOTION FOR PRELIMINARY INJUNCTION**<br><br>Case No. 2:15-cv-00636<br><br>Judge Clark Waddoups |

Plaintiff Rib City Franchising, LLC (Rib City) moves for a preliminary injunction against Defendants Culinary Designs, LLC, Way Out West Restaurant Group, Inc. (WOW), and individual Defendants Sarah Bowen[1] and Toni Jorgensen (collectively, Defendants). (Dkt. No. 8). After briefing from the parties, the court held a hearing on the motion. Subsequently, the court granted in part the motion for preliminary injunction and took the remainder of the motion on submission. (Dkt. No. 28). For the reasons explained below, the court now DENIES the remainder of Rib City's motion.

## BACKGROUND

Rib City franchises Rib City Grill barbeque restaurants across the United States. Ms. Jorgensen and her company WOW allegedly entered into a Licensing Agreement with Rib City to operate a Rib City Grill franchise in American Fork, Utah. (Dkt. No. 2, pp. 2–3). On July 13, 2015, Rib City terminated the Licensing Agreement, due to alleged breaches by Ms. Jorgensen and WOW in failing to pay to Rib City amounts owed under the agreement.

---

[1] Ms. Bowen is also known as Sarah Epperson and Sarah Braegger.

(Dkt. No. 9, p. 3). Rib City claims that on or around the termination date, Ms. Jorgensen transferred the Rib City Grill franchise—including client and supplier lists, menus, recipes, décor, social media accounts, and the Rib City Grill telephone number—to Ms. Bowen, who had worked for a time as an assistant manager at the American Fork location. (Dkt. Nos. 2, p. 7; 23, p. 2). Ms. Bowen and her company, Culinary Designs, then began operating a barbeque restaurant in the same location under the name "Pig City BBQ,"[2] keeping the same Rib City Grill telephone number and website. (Dkt. No. 22, p. 8). Rib City also claims Ms. Bowen began to promote Pig City BBQ using various social media cites (including Yelp, TripAdvisor, Foursquare, Twitter, and Facebook), which were previously maintained to promote Rib City Grill. According to Rib City, rather than create new profiles, Ms. Bowen simply renamed these existing webpages, resulting in Rib City's reviews, photos, and registered marks[3] appearing under Pig City BBQ's name. (Dkt. No. 22, p. 8–9). In addition, Rib City claims Ms. Bowen retained the same interior restaurant layout, décor, color scheme, wall hangings, artwork, dark-colored wood booths, hanging light fixtures, and hanging window frames previously used in Rib City Grill. Rib City contends this design mirrors Rib City's standard decor. (Dkt. No. 22, p. 7). Rib City further alleges that Pig City BBQ's menu remains substantially similar to Rib City Grill's menu, and argues Ms. Bowen has continued using its trade secret information, including its trade secret ketchup. (Dkt. No. 8-1).

Rib City filed suit against Ms. Jorgensen and WOW for breach of the Licensing Agreement, and against all Defendants for trademark infringement and unfair competition in

---

[2] Although Ms. Bowen initially named her restaurant "Pig City Grill," she subsequently changed the name to "Pig City BBQ." (*See* Dkt. Nos. 9-15; 9-16; 9-19; 22). Thus, the court refers to Ms. Bowen's restaurant as Pig City BBQ for the purposes of the instant motion.

[3] Rib City has registered several marks: the names "Rib City Grill," "Rib City Barbeque," and "Rib City," as well as logos of the words "Rib City Grill," "Rib City Barbeque," or "Rib City" against a cityscape, sometimes with a picture of a smiling pig's face. (Dkt. No. 9-2).

violation of the Lanham Act. *See* 15 U.S.C. § 1114 (trademark infringement), § 1125 (unfair competition). It also asserted claims for misappropriation of trade secrets against Ms. Jorgensen, Ms. Bowen, and Culinary Designs, as well as claims against Ms. Bowen and Ms. Jorgensen for civil conspiracy.[4] (Dkt. No. 22, p. 10–17). On the basis of these alleged violations, Rib City asked the court to issue a preliminary injunction, enjoining all Defendants to:

- "Cease any and all use of the Rib City [m]arks, including as they exist in business cards, advertisements, websites, internet listings, videos, social media, promotions, and signage";
- "Disable and/or take down all websites, links, videos, social media (Facebook, Twitter, Yelp[,] TripAdvisor, Foursquare, YouTube, etc.) pages or other internet listings using or referencing the Rib City [m]arks";
- "Permanently disconnect, or cause to be permanently disconnected, the American Fork, Utah Rib City Grill restaurant telephone number, (801) 492-1744, with no referral to any other number or message";
- Cease all use of the confusingly similar "Pig City Grill," "Pig City" and "Pig City BBQ" names;
- "Remove all trade dress associated with the former Rib City Grill restaurant";
- Cease any and all use of Rib City's confidential, proprietary and trade secret information, "including but not limited to Rib City Grill trade secret recipes and ketchup . . . , and . . . return all such materials to [Rib City]"; and
- "Cease operation of the competing and infringing" Pig City BBQ restaurant.

(Dkt. No. 8-1, p. 3–4).

The court held a hearing on the motion on September 29, 2015, and granted the request for preliminary injunctive relief in part. Specifically, the court ordered Defendants to take any action reasonably necessary to remove or facilitate the removal of the Facebook, Twitter, Yelp, TripAdvisor, FourSquare, and YouTube website pages currently using or referencing Rib City marks. It further ordered Defendants to take any action reasonably necessary to disconnect or

---

[4] Rib City recently sought leave to amend its complaint to add additional factual allegations and statutory claims, and to remove its claim for civil conspiracy. (*See* Dkt. No. 33). For the purposes of the instant motion, the court considers only the complaint as originally filed. It expresses no opinion as to whether leave to amend will be granted.

facilitate the disconnection of the (801) 492-1744 telephone number and to take any action reasonably necessary to prevent that number from connecting to Pig City BBQ. The court took the remainder of the motion on submission. (Dkt. No. 28). The court now DENIES the remainder of Rib City's motion for preliminary injunction.

## ANALYSIS

A party seeking a preliminary injunction is required to show (1) a substantial likelihood of success on the merits; (2) irreparable harm to the movant if the injunction is denied; (3) the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest. *Gen. Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007). Where, as here, a party seeks an injunction that would compel mandatory activity on the enjoined party, the movant "bears a heightened burden and must make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms." *See id.* (internal quotation marks omitted). The Tenth Circuit has cautioned that "a preliminary injunction is an extraordinary remedy" that "is the exception rather than the rule." *Id.* (internal quotation marks omitted). Accordingly, the right to relief must be "clear and unequivocal." *Valley Cmty. Pres. Comm'n v. Mineta*, 373 F.3d 1078, 1084 (10th Cir. 2004). On this record, the court concludes Rib City has failed to make the required showing to entitle it to further preliminary injunctive relief.

### A. Rib City is not entitled to further injunctive relief against Ms. Jorgensen and WOW.

As an initial matter, the court finds Rib City is not at this time entitled to further injunctive relief against Ms. Jorgensen and WOW. Rib City has offered no evidence to show that either Ms. Jorgensen or WOW is currently involved with the operation of Pig City BBQ. Thus,

as counsel for Rib City conceded at the hearing, the majority of the injunctive relief Rib City requests is not directed at these defendants. *Cf. Bad Ass Coffee Co. of Hawaii v. JH Nterprises, LLC*, 636 F. Supp. 2d 1237, 1247–48 (D. Utah 2009) (granting injunctive relief where the defendant was bound by a covenant not to compete and was actively engaged in operating a competing business). Furthermore, to the extent Rib City seeks to prospectively enjoin Ms. Jorgensen to return any Rib City recipes or other trade secret and proprietary materials, it has presented no evidence to show that any of those materials are currently being used by Defendants, or that they are in fact proprietary or trade secret. *Cf. CDC Restoration & Const., LC v. Tradesmen Contractors, LLC*, 274 P.3d 317, 323 (Utah App. 2012) (recognizing that the elements of a trade secret claim are: "(1) the existence of a trade secret, (2) communication of the trade secret to the defendant under an express or implied agreement limiting disclosure of the secret, and (3) defendant's use of the secret that injures the proponent." (internal brackets omitted)); Utah Code Ann. § 13–24–2(4) (defining a trade secret as information that "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and . . . is the subject of efforts that are reasonable under the circumstances to maintain its secrecy"). Thus, Rib City has not shown its entitlement to further injunctive relief against Ms. Jorgensen and WOW.

### B. Rib City is not entitled to further injunctive relief against Ms. Bowen or Culinary Designs.

Likewise, Rib City has failed to establish its entitlement to the remaining relief sought in the preliminary injunction motion on its claims against Ms. Bowen and Culinary Designs for trade secret misappropriation, civil conspiracy, and trademark and trade dress infringement in violation of the Lanham Act. The court begins by considering the likelihood of success on the

merits for each claim before turning to the remaining preliminary injunction elements.

> 1. **Likelihood of Success on the Merits of the Trade Secret and Civil Conspiracy Claims**

Rib City has not established a substantial likelihood of success on the merits on its claims for trade secret misappropriation and civil conspiracy. As explained, there is no evidence to indicate Ms. Bowen or Culinary Designs is using any of Rib City's trade secret or proprietary information, or that any such information is trade secret. For instance, the mere allegation that Pig City BBQ currently uses Rib City's "system" and trade secret ketchup is insufficient to show a likelihood of success on a trade secret misappropriation claim. *See, e.g.*, *CDC Restoration*, 274 P.3d at 323 (recognizing that a proponent of a trade secret bears the burden to establish the information is in fact trade secret). Similarly, Rib City has proffered nothing from which the court can find Rib City is substantially likely to succeed on the merits of a claim for civil conspiracy. Mere allegations of conspiracy are insufficient. *See, e.g.*, *Penn v. San Juan Hosp., Inc.*, 528 F.2d 1181, 1185 (10th Cir. 1975) (recognizing that when seeking a preliminary injunction, "[t]he burden is, of course, on the movant to establish his right to such relief. He must do so by clear proof that he will probably prevail when the merits are tried."). Accordingly, the court finds that there is not a substantial likelihood of success on the merits on Rib City's trade secret or conspiracy claims at this time.[5]

> 2. **Likelihood of Success on the Merits of the Trademark Claim**

The court now considers whether there is a substantial likelihood of success on the merits of Rib City's trademark claim. Rib City alleges Ms. Bowen's and Culinary Designs' use of the name "Pig City BBQ," coupled with a picture of a flying pig, infringes on its registered marks in

---

[5] Rib City seems to implicitly acknowledge it has not met its burden to show likelihood of success on the merits with respect to both claims by choosing to not address them in its moving papers. (Dkt. No. 8, p. 21 n.39).

violation of the Lanham Act. *See* 15 U.S.C. § 1114(1)(A). To obtain an injunction on this claim, Rib City must show the Pig City BBQ name and logo are likely to cause confusion in the marketplace concerning the source of the restaurant. *See Water Pik, Inc. v. Med-Sys., Inc.*, 726 F.3d 1136, 1143, 1146 (10th Cir. 2013). The Tenth Circuit has identified six non-exhaustive factors to consider in assessing the likelihood of confusion: (1) the degree of similarity between the marks, (2) the strength or weakness of the marks, (3) evidence of actual confusion, (4) the intent of the alleged infringer in adopting the mark, (5) the degree of care likely to be exercised by purchasers, and (6) the similarity of products and manner of marketing. *See id.* at 1143. No one factor is dispositive. Rather, "[a]t all times the key inquiry is whether the consumer is likely to be deceived or confused by the similarity of the marks." *Id.*

Considering these factors, the court concludes there is not a substantial likelihood of confusion. To begin, the Rib City and Pig City BBQ marks are dissimilar in terms of "sight, sound, and meaning." *See id.* at 155 (internal quotation marks omitted). Indeed, the various logos differ significantly in terms of font, color, and overall visual appearance:






Likewise, although both the Rib City and Pig City BBQ marks include the word "city,"

7

the difference between the word "pig" and "rib"—both in sound, sight, and meaning—is significant. For example, the phrases "Rib City Grill" or "Rib City Barbecue" would lead a reasonable consumer to believe the restaurant specializes in serving ribs. In contrast, the focus of Pig City BBQ's mark is that it is a barbecue restaurant that likely serves pork products. There is nothing to indicate it specializes in serving ribs. This distinction is further highlighted by the different slogans accompanying the Rib City and Pig City BBQ logos. *See, e.g.*, *Hornady Mfg. Co. v. Doubletap, Inc.*, 746 F.3d 995, 1002 (10th Cir. 2014) (concluding that the mark "HORNADY TAP" was dissimilar from the mark "DOUBLETAP"); *Water Pik*, 726 F.3d at 1156 (concluding that the names and logos for the products "SinuCleanse" and "SinuSense," were sufficiently distinct such that there was no Lanham Act violation); *First Sav. Bank v. First Bank System, Inc.*, 101 F.3d 645, 653 (10th Cir. 1996) (concluding the "FirstBank" mark was not similar to the "First Bank System" mark where the font and arrangement of the words were different, one was accompanied by a distinctive logo, and "First Bank System" contained an additional word).

The court further finds that the strength of Rib City's marks does not weigh heavily in Rib City's favor. Although Rib City has registered its marks, its registrations specifically disclaim any exclusive right to the words "Rib," "Barbecue," or "Grill," "apart from the mark as shown." (Dkt. Nos. 29-1, 29-2, 29-3). And taken as a whole, Rib City has not established its marks are conceptually or commercially strong. *See Hornady*, 746 F.3d at 1007 (explaining that conceptual strength represents the mark's place on the "spectrum of distinctiveness" and commercial strength represents the mark's "level of recognition in the marketplace"). On the spectrum of distinctiveness, Rib City's marks are largely descriptive, advertising to a consumer that Rib City is in the business of selling barbecue ribs. *See id.* (recognizing that conceptual

strength is measured on a spectrum of distinctiveness ranging along the following five categories (from least to most distinctive): (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, and (5) fanciful and that whereas suggestive terms "require the buyer to use thought, imagination, or perception to connect the mark with the goods," descriptive terms "directly convey to the buyer the ingredients, qualities, or characteristics of the product" (emphasis omitted)); *see, e.g.*, *First Sav. Bank*, 101 F.3d at 654–55 (concluding a bank's use of the words "First Bank" in its service mark was "weakly descriptive" and not confusingly similar when considering the differences between it and the competing bank's mark). Rib City also fails to put forward sufficient evidence to establish its mark is commercially strong, pointing to little evidence of customer mark recognition. *See Hornady*, 746 F.3d at 1008 (identifying several factors as helpful in evaluating commercial strength, including direct evidence of recognition by consumers and circumstantial evidence regarding: "(1) the length and manner of the mark's use, (2) the nature and extent of advertising and promotion of the mark, and (3) the efforts made to promote a conscious connection, in the public's mind, between the mark and a particular product").

The court also notes the lack of credible evidence to show actual customer confusion. *Cf. id.* at 1004 (considering evidence of actual confusion in the form of telephone calls, a letter, a post on a website, and survey evidence); *Water Pik*, 726 F.3d at 1144 (recognizing that evidence of actual confusion is often introduced through the use of surveys). As evidence of actual confusion, Rib City directs the court to several reviews on yelp.com.[6] In one such review, a user stated, "Just had lunch at Rib/Pig City and it was goooood!" (Dkt. No. 9-22, p. 5). Another reviewer stated, "I'm a harsh restaurant critic, and I love this restaurant. . . . They are going

---

[6] The court assumes, for the purposes of this motion only, that the website printout of the Yelp webpage and user reviews are admissible. *See, e.g.*, Gregory P. Joseph, *Social Media and Internet Evidence*, 41 No.4 Litigation 8 (Summer, 2015) (discussing the admissibility and authentication requirements of YouTube videos, Facebook pages, Yelp reviews, and Instagram photos); *You Fit, Inc. v. Pleasanton Fitness, LLC*, No. 8:12-CV-1917-T-27EAJ, 2013 WL 521784, at *5 (M.D. Fla. Feb. 11, 2013) (considering anonymous yelp.com review as an indication of actual confusion in a trademark case).

through a minor brand/décor change since they did take on new ownership a few months ago and it will only add to the wonderful service and atmosphere." (Dkt. No. 24-7, p. 4). Additional comments on yelp.com include: "I LOVED rib city. Pig city falls a bit short. Under new management and some new revisions. New doesn't always equate to better. This is the case with Pig city. Hopefully they can correct the ship and get back to the basics that made Rib city great;" and "I'd give the new Pig City 2 1/2 stars[.] Rib city was a favorite of ours, and after trying Pig City under new ownership[] it will be a rare occasion to come here. . . . I hope they can step it up and get back to the good food that Rib City produced." (*Id.*).

The court does not find these reviews to be persuasive evidence of actual confusion. Rather, they illustrate that consumers are able to distinguish between Rib City Grill and Pig City BBQ and recognize there has been a change of ownership. This weighs against a finding of likely confusion. *See, e.g.*, *Hornady*, 746 F.3d at 1002 (holding that when considering likelihood of confusion, "the court is not free to focus solely on name similarity . . . [but] must consider the effect of marketplace presentation, including lettering styles, logos[,] coloring schemes, . . . [a]nd the effect packaging has on consumers' ability to recognize a particular mark." (internal quotation marks and citations omitted)). Furthermore, even if these reviews could be perceived as evidence of actual confusion, they are, at best, "isolated, anecdotal instances," which are insufficient to establish a likelihood of confusion for the purposes of a Lanham Act claim. *See Water Pik*, 726 F.3d at 1150; *see, e.g.*, *King of the Mountain Sports, Inc. v. Chrysler Corp.*, 185 F.3d 1084, 1092–93 (10th Cir. 1999) (holding that providing seven examples of actual confusion was insufficient to support a genuine issue of material fact as to the likelihood of confusion).

Similarly, Rib City fails to present any direct evidence Ms. Bowen intended to copy its particular marks for the purpose of deceiving consumers. *See Gen. Motors Corp. v. Urban*

*Gorilla, LLC*, 500 F.3d 1222, 1228 (10th Cir. 2007). Evidence indicating Ms. Bowen may have intended to produce a product similar to Rib City's product, and sell it to similar consumers, is not enough. *See Water Pik*, 726 F.3d at 1159 ("When we have said that evidence of intent to copy may justify an inference of likelihood of confusion, we have been referring to copying a particular mark, not copying a competitor's product. . . . The intent to compete by imitating the successful features of another's product is vastly different from the intent to deceive purchasers as to the source of the product." (internal quotation marks and emphasis omitted)). To the extent Rib City asks the court to infer that Ms. Bowen intended such deception, the court finds the dissimilarity of the marks weighs against such an inference. *See Hornady*, 746 F.3d at 1004 (holding that the fact that the defendant adopted a dissimilar mark weighed against a finding of an intent to deceive, despite evidence that the defendant was aware of the plaintiff's mark). Thus, at this stage of the proceedings, the evidence of intent to deceive is weak.

Rib City has also failed to offer any evidence with respect to the degree of care likely to be exercised by prospective patrons of barbeque restaurants. Speculation that consumers put little thought into the decision to patronize a particular barbecue restaurant does not suffice. *See, e.g.*, *id.* at 1007 (holding that the degree of care factor did not weigh in plaintiff's favor where plaintiff failed to present any evidence that consumers commonly succumb to impulses and purchase ammunition carelessly); *cf. Sally Beauty Co. v. Beautyco, Inc.*, 304 F.3d 964, 975 (10th Cir. 2002) (considering testimony that because of a product's low price point, consumers were unlikely to exercise a high degree of care). Thus, this factor does not weigh in Rib City's favor.

Finally, the court acknowledges that the products and services provided by Rib City Grill and Pig City BBQ are similar, which could increase the risk of customer confusion. But considering the other relevant factors addressed above, including the dissimilarity of the marks,

11

the lack of evidence of actual confusion, and the evidence that consumers are able to distinguish between the two businesses, the court finds there is not a substantial likelihood Rib City will prevail on its claim that the Pig City BBQ mark is likely to cause customer confusion.

### 3. Likelihood of Success on the Merits of the Trade Dress Claim

Likewise, Rib City has not established a substantial likelihood of success on the merits of its claim for trade dress infringement in violation of the Lanham Act. *See* 15 U.S.C. § 1125(a). A product's trade dress "is its overall image and appearance, and may include features such as size, shape, color or color combinations, texture, graphics, and even particular sales techniques." *Gen. Motors Corp.*, 500 F.3d at 1226 (internal quotation marks omitted); *see also Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 765 (1992) (recognizing that a restaurant's atmosphere, theme, and décor can constitute protectable trade dress). To establish a likelihood of success on the merits for this claim, Rib City must put forward sufficient evidence to show that (1) its claimed dress is either inherently distinctive or has acquired secondary meaning, (2) the operation of Ms. Bowen's restaurant Pig City BBQ creates a likelihood of customer confusion, and (3) Rib City's claimed dress is nonfunctional. *See Sally Beauty Co.*, 304 F.3d at 977. On this record, the court finds Rib City has failed to come forward with sufficient evidence showing a substantial likelihood of success on these elements.

For example, the court is not persuaded that Rib City's trade dress is inherently distinctive or has acquired a secondary meaning. The court finds nothing in Rib City's standard decor—which features artwork, signs, images of pigs at play, hanging window frames, and antique tools and farm equipment—that would "intrinsically serve[] to identify a particular source" in a way that "almost automatically tell[s] a customer that they refer to a brand and

immediately signal[s] a brand or a product source."[7] *See id.* at 977; *see, e.g.*, *Miller's Ale House, Inc. v. Boynton Carolina Ale House*, LLC, 702 F.3d 1312, 1324 (11th Cir. 2012) (rejecting argument that restaurant décor was distinctive where its name was fixed in red letters on the outside of its building and on its menu, the staff dressed in khakis and polo shirts, there was a center bar with a soffit, seating at high-top tables, and wood paneling on the walls, because these were all prototypical features of a standard sports bar or brew pub); *Buca, Inc. v. Gambucci's, Inc.*, 18 F. Supp. 2d 1193, 1202 (D. Kan. 1998) (rejecting the argument that the combination of décor elements that "create[d] an overall appearance and total image that is kitschy, campy, gaudy, excessive, irreverent, humorous, and a parody of a 1940's/1950's immigrant Southern Italian restaurant" was protectable trade dress).

Additionally, Rib City's menu is not so distinctive that it deserves Lanham Act protection. Although the court notes the similarities between the Rib City Grill and Pig City BBQ menu, both appear to contain items that would be standard at many barbeque restaurants. Rib City neither alleges nor identifies any evidence to show its menu is unique in comparison to standard barbeque restaurants, or that the menu is "intertwined with and indicative of" Rib City Grill or the Rib City Grill experience. *Cf. BLT Rest. Grp. LLC v. Tourondel*, No. 10 CV 06488 GBD, 2011 WL 3251536, at *4 (S.D.N.Y. July 19, 2011) (concluding plaintiff had sufficiently alleged a Lanham Act claim where it claimed its menu was unique in comparison to typical burger restaurants, and that the menu was "intertwined with and indicative of" the restaurant and experience); *In-N-Out Burgers v. Chadders Rest.*, No. 2:07-CV-394 TS, 2007 WL 1983813, at

---

[7] Whether or not Rib City Grill's American Fork décor constituted Rib City's trade dress is disputed. For example, Dina Green, the Comptroller for Rib City Group, Inc., submitted a declaration stating that Rib City assisted Ms. Jorgensen with designing the American Fork Rib City Grill to meet Rib City's design specifications and to obtain the Rib City style booths, light fixtures, and other design features. (Dkt. No. 25, p. 2). In contrast, Ms. Jorgensen submitted a declaration in which she stated that although Rib City offers franchisees the option to purchase a restaurant décor package, WOW instead obtained its decorations, artwork and furnishing from local antique dealers and online retail and wholesale suppliers. Ms. Jorgensen claims she decorated the American Fork Rib City Grill to highlight her relationship to her brother, who is an actor. (Dkt. 17-1, p. 3–4).

*1 (D. Utah June 29, 2007) (granting preliminary injunction on trademark infringement claim where competing restaurant was serving trademarked menu items).

Furthermore, Rib City has presented insufficient evidence to show its trade dress has acquired a secondary meaning, i.e. that the menu items or décor have become so associated in consumers' minds with Rib City's restaurants that such items serve to identify and distinguish them from similar services provided by others. *See Sally Beauty*, 304 F.3d at 978 ("The ultimate inquiry [in assessing secondary meaning] is whether in the consumer's mind the mark denotes a single thing coming from a single source."). Indeed, Rib City does not detail the nature and extent of its efforts to create, advertise, or promote Rib City through use of its trade dress. It also fails to show its exclusive use of the trade dress or consumer surveys linking Rib City's sample trade dress to a single source.[8] *Cf. Water Pik*, 726 F.3d at 1154 (recognizing a plaintiff can show a secondary meaning through "direct evidence, such as consumer surveys or testimony from consumers," and "circumstantial evidence regarding: (1) the length and manner of [the trade dress] use, (2) the nature and extent of advertising and promotion of the mark and (3) the efforts made in the direction of promoting a conscious connection, in the public's mind, between the name or mark and a particular product or venture"). Other evidence in the record contradicts a finding that Rib City's trade dress has acquired a secondary meaning. Indeed, Ms. Jorgensen submitted a declaration in which she explained that there are no Rib City Grill restaurants currently operating in Utah and that the closest Rib City Grill restaurants are located in Colorado. She also states that "there is no distinctive décor, artwork, wall hangings, furnishings, fixtures or equipment including the alleged 'pigs at play' art work" featured in Rib City's Colorado

---

[8] Rib City states that Rib City "has spent significant time, energy and money building and protecting the establishment, operation and merchandising of the [Rib City Grill] franchise system and its restaurants, which include readily recognizable design, color scheme, layout, décor, menu, and signage." (Dkt. No. 9, p. 4–5). This generic claim is insufficient to meet Rib City's burden at this stage.

14

restaurants. Rather, "all of the Colorado stores have different colors and décor from each other." (Dkt. No. 17-1, p. 3). Thus, Rib City has not shown at this stage that its trade dress has acquired a secondary meaning.

The court is also unpersuaded by Rib City's averment that there is a likelihood of customer confusion regarding its trade dress claim. As with its trademark claim, Rib City points to customer reviews on yelp.com as evidence of actual confusion. As explained, these reviews illustrate that customers are not confused but are instead capable of distinguishing between Pig City BBQ and Rib City Grill. Moreover, although Rib City argues that Ms. Bowen's alleged use of the Rib City trade dress "creates market confusion, especially in conjunction with the fact that the restaurant location is the same, and Pig City [BBQ] is also using the same telephone number and advertising media as the former Rib City Grill restaurant," (Dkt. No. 8, p. 26), the court's previous order directed the Defendants to take any action reasonably necessary to disconnect the former Rib City Grill number and disassociate Pig City BBQ with Rib City Grill on various websites. (Dkt. No. 28). This should alleviate Rib City's specific concerns of customer confusion.

Also weighing against a finding of likely confusion is the fact that Ms. Bowen significantly changed many of the elements of décor that Rib City claims infringe on its trade dress, greatly minimizing the potential for customer confusion or the need for injunctive relief to prevent any trade dress infringement. *See In-N-Out Burgers*, 2007 WL 1983813, at *4 (concluding plaintiff was not entitled to preliminary injunction on trade dress claim where the defendant had already changed some of the allegedly infringing trade dress).[9] Accordingly, the court finds that Rib City is not substantially likely to succeed on the merits of its trade dress

---

[9] Although at oral argument Rib City argued the light fixtures, booths, restaurant layout, and decorative hanging window frames remain the same, it offers no argument or evidence to show these items are sufficiently distinctive and are nonfunctional. *See Sally Beauty Co. v. Beautyco, Inc.*, 304 F.3d 964, 977 (10th Cir. 2002).

claim because it has not met its burden to show its claimed trade dress is distinctive or has acquired a secondary meaning, that there is a likelihood of confusion, or that its trade dress is nonfunctional.[10]

### 3. The Other Preliminary Injunction Elements

Because Rib City has not shown a substantial likelihood of success on the merits of any of its claims against Ms. Bowen and Culinary Designs, it is not entitled to a preliminary injunction on the remaining relief sought. Nevertheless, the court notes that the other preliminary injunction elements would weigh against issuing further injunctive relief against Ms. Bowen and Culinary Designs at this time. For instance, Rib City has not shown the harm it would suffer in the absence of a preliminary injunction is irreparable. As explained, the court has determined there is not a substantial likelihood of customer confusion that would lead to the loss of Rib City's reputation and good will. This is particularly true in light of the court's previous ruling granting in part the motion for preliminary injunction, and the changes Ms. Bowen has made to her business. In contrast, granting Rib City the remaining injunctive relief it seeks would significantly damage Ms. Bowen's livelihood. Indeed, Rib City seeks an injunction that Ms. Bowen stop using the name Pig City BBQ and cease operating the restaurant all together. Thus, the balance of harms weighs against Rib City and in Ms. Bowen's and Culinary Designs' favor. Finally, the court finds that where, as here, there does not exist a great risk of customer confusion—particularly going forward—it is not in the public interest's to grant the extraordinary relief sought in the remainder of Rib City's motion.

---

[10] The court notes that Rib City's motion for preliminary injunction does not address the requirements of distinctiveness/secondary meaning or non-functionality. (*See* Dkt. No. 8).

**CONCLUSION**

For these reasons, Rib City's motion for preliminary injunction (Dkt. No. 8) is DENIED with respect any issues not previously addressed in the court's September 30, 2015 order (Dkt. No. 28).

SO ORDERED this 2nd day of November, 2015.

BY THE COURT:

_____
Clark Waddoups
United States District Judge